JEFFREY H. WOOD
Acting Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

RACHEL K. ROBERTS
Trial Attorney (WA Bar No. 50303)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
7600 Sand Point Way NE
c/o DOJ/DARC
Seattle, WA 98115
Tel | (206) 526-6881
Fax | (206) 526-6665
Email:  Rachel.Roberts@usdoj.gov

*Attorney for Defendants*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and CENTER FOR FOOD SAFETY, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. BUREAU OF LAND MANAGEMENT; RYAN ZINKE, Secretary of the Department of the Interior; BRIAN STEED, Deputy Director, Programs and Policy, Bureau of Land Management; JEROME PEREZ, California State Director, Bureau of Land Management; BETH RANSEL, District Manager, California Desert District, Bureau of Land Management; KATRINA SYMONS, Field Manager, Barstow Field Office; Bureau of Land Management. <br> Defendants. | Case No. 2:17-cv-08587 <br><br> **FEDERAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Hearing Date:  April 19, 2018 <br> Time:  8:30am <br> Courtroom:  9D <br> Judge: Honorable George H. Wu |

*Federal Defendants'*
*Motion to Dismiss*

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that, on April 19, 2018, or as soon thereafter as it may be taken under submission or heard, the U.S. Bureau Of Land Management ("BLM"); Ryan Zinke, Secretary of the Department of the Interior; Brian Steed, Deputy Director, Programs and Policy, BLM; Jerome Perez, California State Director, BLM; Beth Ransel, District Manager, California Desert District, BLM; and Katrina Symons, Field Manager, Barstow Field Office, BLM[1] (together, "Defendants"), will, and hereby do, move this Court for an order dismissing the above-captioned case with prejudice. This motion will be made before the Honorable George H. Wu, United States District Judge, located at the First Street Courthouse, 350 West First Street, Courtroom 9D, Los Angeles, California 90012.

Defendants bring the motion on the grounds that the Center for Biological Diversity and the Center for Food Safety (together, "Plaintiffs") lack standing; the Court lacks jurisdiction to consider Plaintiffs' claims under the Administrative Procedure Act; and the Plaintiffs fail to state claims under the General Railroad Right-of-Way Act of March 3, 1875 or the Federal Land Policy and Management Act.

This motion is made upon this Notice and Motion, the attached

---

[1] The BLM Field Office with jurisdiction over the area at issue is the Needles Field Office, managed by Michael Ahrens, not the Barstow Field Office, managed by Katrina Symons. *See Consolidated Appropriations Act, 2016*, 129 Stat. 2242, P.L. 114-113, § 121 (Dec. 18, 2015). This fact is not material at this stage and the Plaintiffs have agreed to amend their complaint to replace Katrina Symons with Michael Ahrens should their complaint survive this motion to dismiss.

*Federal Defendants'
Motion to Dismiss*

Memorandum of Points and Authorities and exhibits, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which was held on January 29, 2018.

DATED:  February 9, 2018          Respectfully submitted,

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice

*/s/ Rachel K. Roberts*
RACHEL K. ROBERTS
Trial Attorney (WA Bar No. 50303)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
7600 Sand Point Way NE
c/o DOJ/DARC
Seattle, WA 98115
Tel | (206) 526-6881
Fax | (206) 526-6665
Email:  Rachel.Roberts@usdoj.gov

*Attorneys for Federal Defendants*

*Federal Defendants'
Motion to Dismiss*

# Table of Contents

BACKGROUND ................................................................................................2

I.   Factual Background ..................................................................................2

    A.   Cadiz Project Permitting History .....................................................2

    B.   Changing Federal Positions on the Scope of ARZC's ROW .............4

II.  Legal Background .....................................................................................7

    A.   The 1875 Act ....................................................................................7

    B.   The Federal Land Policy and Management Act................................7

    C.   Administrative Procedure Act ..........................................................8

STANDARD OF REVIEW ...............................................................................8

I.   Motion to Dismiss for Lack of Jurisdiction.............................................8

II.  Motion to Dismiss for Failure to State a Claim.......................................8

III. Reliance on Documents Outside the Pleadings ........................................9

ARGUMENT ....................................................................................................9

I.   Plaintiffs Lack Article III Standing .........................................................9

    A.   Plaintiffs' Alleged Injuries are not Traceable to BLM ...................11

    B.   Plaintiffs' Alleged Injuries are not Redressable by this Court ..........13

II.  Plaintiffs Do Not Have Third-Party Standing to Challenge BLM's
     Administrative Determination of ARZC's 1875 Act ROW .........................14

III. The Court Lacks Subject-Matter Jurisdiction Under the APA ....................16

    A.   The Letters are not "Agency Action"...............................................16

    B.   Even if the Letters are "Agency Action," they are not "Final" ..........17

C.      Plaintiffs Seek to Compel Action BLM is Not Required to Take ......20

IV.   Alternatively, Plaintiffs Fail to State a Claim Upon Which Relief
        May be Granted ........................................................................22

        A.      Plaintiffs Fail to State a Claim Under FLPMA...............................22

        B.      Plaintiffs Fail to State a Claim under the 1875 Act ..........................23

        C.      Plaintiffs' APA Claim Cannot Proceed Alone...................................24

CONCLUSION ............................................................................24

*Federal Defendants'*
*Motion to Dismiss*

**Table of Authorities**

**Cases**

*Am. Trucking Ass'n, Inc. v. United States,*
    755 F.2d 1292 (7th Cir. 1985)..................................................17

*ASARCO, Inc. v. Kadish,*
    490 U.S. 605 (1989) .............................................................13

*Baker v. Carr,*
    369 U.S. 186 (1962) ..............................................................9

*Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1990) ...................................................8

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ..............................................................9

*Bennett v. Spear,*
    520 U.S. 154 (1997) .............................................................18

*Califano v. Sanders,*
    430 U.S. 99 (1977) ..............................................................16

*Cameron v. United States,*
    252 U.S. 450 (1920) .............................................................19

*Carden v. Kelly,*
    175 F. Supp. 2d 1318 (D. Wyo. 2001) ........................................7

*Clarke v. Sec. Indus. Ass'n,*
    479 U.S. 388 (1987) .............................................................23

*Ctr. For Biological Diversity v. Cty. of San Bernardino,*
    201 Cal. Rpt. 3d 898 (Cal. Ct. App. 2016).................................3, 4

*Ctr. For Biological Diversity v. Veneman,*
    394 F.3d 1108 (9th Cir. 2005)..................................................16

*Ctr. for Food Safety v. Johanns,*
    451 F. Supp. 2d 1165 (D. Haw. 2006) .......................................17

*El Rescate Legal Servs. v. Exec. Office of Immigration Review,*
    959 F.2d 742 (9th Cir. 1991)...................................................24

*Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs,*
    543 F.3d 586 (9th Cir. 2008)...................................................19

*Federal Defendants'*
*Motion to Dismiss*

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
    528 U.S. 167 (2000) .................................................................. 10, 11

*Gen. Atomic Co. v. United Nuclear Corp.*,
    655 F.2d 968 (9th Cir. 1981) ............................................................8

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*,
    465 F.3d 1123 (9th Cir. 2006) ........................................................13

*Great N. Ry. Co. v. United States*,
    315 U.S. 262 (1942) ......................................................................23

*Gros Ventre Tribe v. United States*,
    469 F.3d 801 (9th Cir. 2006) .................................................. 16, 20

*Hall v. Norton*,
    266 F.3d 969 (9th Cir. 2001) .........................................................13

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
    593 F.3d 923 (9th Cir. 2010) .........................................................22

*Independent Equipment Dealers Ass'n v. E.P.A.*,
    372 F.3d 420 (D.C. Cir. 2004) .......................................................19

*Indus. Customers of Nw. Utils. v. Bonneville Power Admin.*,
    408 F.3d 638 (9th Cir. 2005) .........................................................19

*Isaacson v. Sec'y of Hous. & Urban Dev.*,
    No. C16-1254JLR, 2017 WL 1364559 (W.D. Wash. Apr. 14, 2017) ................11

*Jamestown & N. R. Co. v. Jones*,
    177 U.S. 125 (1900) ........................................................................7

*Kane Cty. Utah v. Salazar*,
    562 F.3d 1077 (10th Cir. 2009) .....................................................22

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) ......................................................................15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014) ..................................................................23

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ......................................................................24

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ......................................................................10

iv

*Federal Defendants'*
*Motion to Dismiss*

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ...................................................................................24

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir. 2006) ........................................................................9

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
  567 U.S. 209 (2012) ...................................................................................23

*McCarthy v. United States*,
  850 F.2d 558 (9th Cir. 1988) ........................................................................9

*Nat'l Ass'n of Home Builders v. Norton*,
  415 F.3d 8 (D.C. Cir. 2005) ........................................................................18

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
  696 F.3d 849 (9th Cir. 2012) ......................................................................10

*Norton v. S. Utah Wilderness*,
  542 U.S. 55 (2004) ......................................................................... 17, 20, 21

*Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n.*,
  457 F.3d 941 (9th Cir. 2006) ......................................................................13

*Nw. Requirements Utils. v. FERC*,
  798 F.3d 796 (9th Cir. 2015) ......................................................................23

*Or. Nat. Res. Council v. Thomas*,
  92 F.3d 792 (9th Cir. 1996) ........................................................................24

*Powers v. Ohio*,
  499 U.S. 400 (1991) ...................................................................................15

*Pritikin v. Dep't of Energy*,
  254 F.3d 791 (9th Cir. 2001) ......................................................................11

*Robertson v. Dean Witter Reynolds, Inc.*,
  749 F.2d 530 (9th Cir. 1984) ........................................................................9

*S. Utah Wilderness All. v. BLM*,
  425 F.3d 735 (10th Cir. 2005) ............................................................ 12, 18, 19

*San Luis Unit Food Producers v. United States*,
  709 F.3d 798 (9th Cir. 2013) ......................................................................16

*Sierra Club. v. Babbitt*,
  65 F.3d 1502 (9th Cir. 1995) ......................................................................17

*Simon v. E. Ky. Welfare Rights Org.,*
   426 U.S. 26 (1976) ....................................................................13

*Singleton v. Wulff,*
   428 U.S. 106 (1976) ..................................................................15

*St. Clair v. City of Chico,*
   880 F.2d 199 (9th Cir. 1989) .......................................................9

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998) ....................................................................14

*The Wilderness Soc'y v. Kane Cty.,*
   632 F.3d 1162 (2011) ................................................................15

*Thompson v. McCombe,*
   99 F.3d 352 (9th Cir. 1996) .........................................................8

*Townley v. Miller,*
   722 F.3d 1128 (9th Cir. 2013) .....................................................9

*Ukiah Valley Med. Ctr. v. FTC,*
   911 F.2d 261 (9th Cir. 1990) .....................................................16

*United States v. Garfield Cty.,*
   122 F. Supp. 2d 1201 (D. Utah 2000) .............................. 12, 18, 19

*United States v. Jenks,*
   22 F.3d 1513 (10th Cir. 1994) .....................................................7

*Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs,*
   714 F.3d 186 (4th Cir. 2013) .....................................................21

*W. Watersheds Project v. Matejko,*
   468 F.3d 1099 (9th Cir. 2006) ............................................... 7, 22

*Warth v. Seldin,*
   422 U.S. 490 (1975) ..................................................................14

**Statutes**

43 U.S.C. § 1701(a) ....................................................................22

43 U.S.C. § 1701(h) ....................................................................22

43 U.S.C. § 1732(a) ......................................................................7

43 U.S.C. § 1769 ...........................................................................7

*Federal Defendants'*
*Motion to Dismiss*

43 U.S.C. § 1769(a) ........................................................................................22

43 U.S.C. § 932 ..............................................................................................18

43 U.S.C. §§ 934–939 ...................................................................................3, 7

5 U.S.C. § 551(13) ....................................................................................... 8, 17

5 U.S.C. § 702 ............................................................................................ 16, 24

5 U.S.C. § 704 ............................................................................................. 8, 18

5 U.S.C. § 706(1) ....................................................................................... 20, 21

5 U.S.C. § 706(2)(A) ........................................................................................8

*Consolidated and Further Continuing Appropriations Act of 2013*,
   Pub L. 113-6, Title IV, 127 Stat. 198 (2013) .................................................6

*Consolidated and Further Continuing Appropriations Act of 2015*,
   Pub L. 113-235, § 112,128 Stat. 2130 (2014) ...............................................6

*Consolidated Appropriations Act of 2008*,
   Pub L. No. 110-161, § 19, 121 Stat. 1544 (2007) .........................................5

*Consolidated Appropriations Act of 2012*,
   Pub L. 112-74, § 118, 125 Stat. 786 (2011) .................................................6

*Consolidated Appropriations Act of 2014*,
   Pub L. 113-76, § 114, 128 Stat. 5 (2014) .....................................................6

*Consolidated Appropriations Act of 2016,*
   Pub L. 114-113, § 121, 129 Stat. 2242 (2015) .............................................6

*Continuing Appropriations Act of 2011*,
   Pub L. No. 111-242, 124 Stat. 2607 (2010) .................................................5

*Interior Dep't and Further Continuing Appropriations, Fiscal Year 2010*,
   Pub L. No. 111–88, § 110(b), 123 Stat. 2904 (2009) ....................................5

*Omnibus Appropriations Act of 2009*,
   Pub L. No. 111-8, § 112, 123 Stat. 524 (2009) .............................................5

*Revised Continuing Appropriations Resolution of 2007*,
   Pub L. No. 110-5, § 20521, 121 Stat. 8 (2007) .............................................5

*Federal Defendants'*
*Motion to Dismiss*

**Rules**

Fed. R. of Civ. P. 12(b)(1) ........................................................... 1, 8, 9, 24

Fed. R. of Civ. P. 12(b)(6) ........................................................... 2, 8, 9, 24

*Federal Defendants'*
*Motion to Dismiss*

**Table of Exhibits**

| Document | Exhibit Number |
|---|---|
| Cadiz Valley Water Conservation, Recovery, and Storage Project Environmental Impact Report Excerpts | 1 |
| Lease between Cadiz, Inc., and Arizona and California Railroad | 2 |
| Solicitor Opinion M-37025 | 3 |
| Notice of Availability of Final Environmental Impact Report | 4 |
| Water Purchase and Sale Agreement between Cadiz, Inc., Fenner Valley Mutual Water Company, and Santa Margarita Water District | 5 |
| Groundwater Management, Monitoring, and Mitigation Plan for the Cadiz Valley Groundwater, Conservation, Recovery and Storage Project | 6 |
| Letter from California Public Lands Commission to Cadiz, Inc. (Sept. 19, 2017) | 7 |
| Letter from Acting Assistant Secretary for Water and Science, U.S. Department of the Interior, to Senator Feinstein (Jan. 13, 2009) | 8 |
| Solicitor Opinion M-36964 | 9 |
| Letter from the Secretary of the Interior to Senator Feinstein (Sept. 4, 2009) | 10 |
| Temporary Suspension of Solicitor Opinion M-37025 | 11 |
| Solicitor Opinion M-37048 | 12 |
| Letter from Michael Nedd, Acting Director of the Bureau of Land Management, to Scott Slater, CEO and President of Cadiz, Inc. (Oct. 13, 2017) | 13 |

ix

*Federal Defendants'*
*Motion to Dismiss*

| Document | Exhibit Number |
|---|---|
| Letter from Michael Nedd, Acting Director of the Bureau of Land Management, to Brad Ovitts, President of Arizona and California Railroad (Oct. 13, 2017) | 14 |
| Letter from Michael Nedd, Acting Director of the Bureau of Land Management, to Dan Ferons, General Manager of Santa Margarita Water District (Oct. 13, 2017) | 15 |
| Letter from James Kenna, California State Director of the Bureau of Land Management, to Jason Peery, Genesee & Wyoming, Inc. and Scott Slater, Cadiz, Inc. (Oct. 2, 2015) | 16 |

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs challenge a letter from BLM to Cadiz, Inc. ("Cadiz"), in which BLM concluded that a water pipeline Cadiz proposes to build does not require a right of way ("ROW") grant under the Federal Land Policy and Management Act ("FLPMA"), because the proposed use is within the scope of an existing ROW grant. *See* Compl. ¶ 52, ECF No. 1. Notably, the challenged letter does not authorize Cadiz or any other entity to withdraw water from the aquifer underlying its property, construct the pipeline, or deliver water from the pipeline. Nor does the letter purport to modify the scope of the third-party's ROW. The letter merely concludes that no agency action is necessary, because Cadiz does not request—and does not require—a ROW from BLM.

Plaintiffs' claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiffs lack Article III standing. Because their alleged injuries flow from the drawdown of water from Cadiz's own aquifer and the construction of the pipeline by Cadiz within Arizona and California Railroad's ("ARZC's") ROW, their alleged injuries are neither traceable to BLM's letter, nor redressable by this Court. Plaintiffs also lack third-party standing to adjudicate the scope of a non-party's ROW. Furthermore, Plaintiffs fail to challenge an agency action or a final agency action, and thus this Court lacks subject-matter jurisdiction under the Administrative Procedure Act (the "APA"). Plaintiffs also seek to compel relief that this Court cannot grant.

Even if this Court were to find that Plaintiffs have standing and that it has subject-matter jurisdiction, the Court should dismiss Plaintiffs' claims under

*Federal Defendants'
Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs fail to state a claim for which relief may be granted under the 1875 Act or FLPMA, their APA claim cannot survive as their sole cause of action.

## BACKGROUND

### I.  FACTUAL BACKGROUND

Cadiz owns land in the Mojave Desert, which sits above certain underground aquifers that drain to the Bristol and Cadiz Dry Lakes, where the freshwater in the aquifers is mixed with saltwater or lost to evaporation.[1]  *See* Ex. 1 at 7.  Cadiz has pursued multiple options to either use its aquifers as storage and/or sell water from the aquifers.

### A.    Cadiz Project Permitting History

Cadiz initially partnered with the Metropolitan Water District of Southern California (MWD), in a plan to store surplus Colorado River water in Cadiz's aquifer, and then extract it in times of drought. *See id.* at 3. In 2002, BLM issued a decision approving MWD's application for a ROW grant for a pipeline through BLM-managed lands that would transfer Cadiz's water to MWD, after publishing a joint Environmental Impact Report/Environmental Impact Statement for the project with MWD. *See id.* at 4. However, MWD did not accept the ROW grant from BLM and did not pursue the project. *See id.*

---

[1] For the purposes of this motion to dismiss, we do not dispute the facts as set out in Plaintiffs' Complaint. However, because Plaintiffs' complaint focuses on the more recent history of the project, we provide additional publicly-available documents here, many of which are referred to in Plaintiffs' complaint, to supplement the record before the Court.

In 2008, Cadiz entered into a 99-year lease with ARZC, for the purpose of constructing a water pipeline within ARZC's already-existing ROW, which the United States originally conveyed to ARZC's predecessor pursuant to the General Railroad Right-of-Way Act of March 3, 1875, 18 Stat. 482, 43 U.S.C. §§ 934–939 (the "1875 Act"). *See* Compl. ¶ 33, Ex. 2 (lease). This lease, as amended in 2011, provided for certain uses of water from the pipeline by the railroad. *See* Ex. 2 at 20.

In 2010, Cadiz, Inc., entered into option agreements for purchase of water from Cadiz's aquifer with six water providers, with the Santa Margarita Water District (SMWD) contracting for the largest portion. *See* Ex. 1 at 10. SMWD and others analyzed the Cadiz project, including the conveyance of water from Cadiz's aquifer along ARZC's ROW, under the California Environmental Quality Act ("CEQA"). *See id.* at 1.[2]

In December of 2011, when SMWD published its Draft Environmental Impact Report (Draft "EIR"), SMWD understood the 2011 Solicitor's Opinion M-37025[3] to mean that no federal authorization was needed for pipeline construction because the proposed pipeline would serve both railroad and commercial purposes.

---

[2] CEQA's "chief purpose" is "providing public agencies and the general public with detailed information about the effects of a proposed project on the environment." *See CBD v. County of San Bernardino*, 201 Cal. Rpt. 3d 898, 906 (Cal. Ct. App. 2016) (quoting *San Franciscans for Reasonable Growth v. City and County of San Francisco*, 198 Ca. Rptr. 634, 639 (1984)).

[3] Solicitor's Opinion M-37025 stated that a use within a railroad ROW easement issued under the 1875 Act must derive from or further a railroad purpose. *See* Compl. ¶ 41; Ex. 3 at 9.

*Federal Defendants'*
*Motion to Dismiss*

*See* Ex. 1 at 6. BLM was not included in the two-page list of agencies that may have to approve the project. *See id.* at 11–12.

SMWD released its final EIR for the Cadiz project in July of 2012, and entered into a water purchase and sale agreement with Cadiz. *See* Ex. 4 (SMWD Notice of Availability of Final EIR); Ex. 5 (final purchase and sale agreement). San Bernardino County approved a groundwater management plan for the Cadiz Project soon thereafter. *See* Compl. ¶ 28; Ex. 6 (plan excerpt). State courts upheld the EIR after it was challenged by several groups, including CBD. *See CBD v. County of San Bernardino*, 201 Cal. Rptr. 3d 898 (Cal. Ct. App. 2016). However, on September 20, 2017, the California Public Lands Commission sent a letter to Cadiz, Inc., stating that the Commission owns a 200-foot-wide strip of land that the pipeline path crosses. *See* Ex. 7. The letter requested that Cadiz provide an application for a lease, which may require additional environmental review. *See id.*

## B.    Changing Federal Positions on the Scope of ARZC's ROW

The Department of the Interior's position on whether the Cadiz Pipeline is consistent with ARZC's ROW has changed over time. In communications with Senator Feinstein's office in January of 2009, the Department stated that no federal authorization or analysis would be needed for construction of the Cadiz Project within ARZC's 1875 Act ROW, based on its interpretation of the 1875 Act contained in Solicitor's Opinion M-36964. *See* Ex. 8 at 2–3 (letter); Ex. 9 (M-36964). In response, Senator Feinstein sent a letter to then-Secretary Salazar, requesting that the Department review M-36964, which the Secretary agreed to do. *See* Ex. 10. As a result of this review, the Department's Solicitor issued Opinion

*Federal Defendants'
Motion to Dismiss*

M-37025 in November of 2011, which partially withdrew Opinion M-36964, and concluded that a use within a railroad ROW easement issued under the 1875 Act must derive from or further a railroad purpose. *See* Compl. ¶ 40, Ex. 3. In 2015, BLM analyzed the scope of ARZC's 1875 Act ROW pursuant to the new M-37025 Opinion, determined that the Cadiz Project did not derive from or further a railroad purpose, and concluded that Cadiz would have to obtain an authorization from BLM to construct the water conveyance pipeline. *See* Compl. ¶ 49.

The project was stymied, however, because federal appropriations riders prohibited BLM from processing the authorization. An appropriations rider was enacted in 2007 that prohibited the use of funds for approval of a right-of-way on the pertinent portion of BLM land. *See Revised Continuing Appropriations Resolution, 2007*, P.L. 110-5, § 20521, 121 Stat. 8, 28 (Feb. 15, 2007). *See also Consolidated Appropriations Act, 2008*, P.L. 110-161, § 19, 121 Stat. 1544, 2120–21, (Dec. 26, 2007); *Omnibus Appropriations Act, 2009*, P.L. 111-8, § 112, 123 Stat. 524, 723 (Mar. 11, 2009). In October of 2009, Congress added a provision to the rider that "[a]ny proposed new use of [ARZC's] [ROW] for conveyance of water shall not proceed unless the Secretary of the Interior certifies that the proposed new use is within the scope of the [ROW]." *Interior Dep't and Further Continuing Appropriations, Fiscal Year 2010*, P.L. 111–88, § 110(b), 123 Stat. 2904, 2928 (Oct. 30, 2009). Appropriations bills included riders with provisions similar to these two provisions until May of 2017.[4]

---

[4] *See*, *Continuing Appropriations Act, 2011*, P.L. 111-242, 124 Stat. 2607 (Sept. 30,

On June 30, 2017, the Acting Interior Solicitor temporarily suspended and withdrew Opinion M-37025 to determine whether the analysis in that opinion was correct. *See* Ex. 11. On September 1, 2017, the Acting Interior Solicitor issued Opinion M-37048, which concluded that 1875 Act ROWs "allow railroad companies to lease portions of their easements to third parties without permit or grant from [BLM], provided that such leases are limited to the surface, broadly defined, of the easement and do not interfere with the continued use of the easement as a railroad." Compl. ¶ 50, Ex. 12. M-37048 also stated that, alternatively, even if a railroad purpose served as a limitation on the scope of rights a railroad received under the 1875 Act, that railroad purpose should be broadly interpreted. *See* Ex. 12 at 22–25.

On October 13, 2017, BLM sent identical letters to Cadiz, AZRC, and SMWD (the "October 13, 2017 letters") clarifying that the Cadiz Project pipeline is within the scope of ARZC's 1875 Act ROW, and that no BLM ROW grant is required. *See* Compl. ¶ 51, Exs. 13-15.

---

2010); *Consolidated Appropriations Act, 2012*, P.L. 112-74, § 118, 125 Stat. 786, 1011 (Dec. 23, 2011); *Consolidated and Further Continuing Appropriations Act, 2013*, P.L. 113-6, Title IV, 127 Stat. 198 (Mar. 26, 2013); *Consolidated Appropriations Act, 2014*, P.L. 113-76, § 114, 128 Stat. 5 (Jan. 17, 2014); *Consolidated and Further Continuing Appropriations Act, 2015*, P.L. 113-235, § 112,128 Stat. 2130, (Dec. 16, 2014); *Consolidated Appropriations Act, 2016*, P.L. 114-113, § 121, 129 Stat. 2242, (Dec. 18, 2015).

*Federal Defendants' Motion to Dismiss*

## II.   LEGAL BACKGROUND

### A.   The 1875 Act

The 1875 Act provided that a ROW "through the public lands of the United States is granted to any railroad company" meeting certain requirements. 43 U.S.C. § 934. A railroad company could obtain a ROW by the "actual construction of its road" or "in advance of construction by filing a map . . . ." *Jamestown & N. R. Co. v. Jones*, 177 U.S. 125, 130–131 (1900). After approval by the Department of the Interior, "all such lands over which such right of way shall pass shall be disposed of subject to the right of way." *Id.*

### B.   The Federal Land Policy and Management Act

"[FLPMA] sets forth Congressional declaration of policy regarding the disposition and management of federal public lands." *Carden v. Kelly*, 175 F. Supp. 2d 1318, 1324 (D. Wyo. 2001). FLPMA requires the Secretary of the Department of the Interior to "manage the public lands under principles of multiple use and sustained yield . . . ." 43 U.S.C. § 1732(a). "FLPMA replaced a 'tangled array of laws granting rights-of-way across federal lands,' with a single method for establishing a right-of-way over federal lands." *W. Watersheds Project v. Matejko*, 468 F.3d 1099, 1104 (9th Cir. 2006) (quoting *United States v. Jenks*, 22 F.3d 1513, 1515 (10th Cir. 1994). That said, "Congress specifically chose to preserve vested rights," and did not terminate rights granted prior to FLPMA's creation on October 21, 1976. *See id.* (citing 43 U.S.C. § 1769).

*Federal Defendants'*
*Motion to Dismiss*

### C.     Administrative Procedure Act

The judicial review provisions of the APA provide a limited private right of action for review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court[.]" 5 U.S.C. § 704. The APA defines agency action to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" *Id.* § 551(13). The reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" *Id.* § 706(2)(A).

## STANDARD OF REVIEW

### I.     MOTION TO DISMISS FOR LACK OF JURISDICTION

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of an action for "lack of subject matter jurisdiction." Faced with a Rule 12(b)(1) motion, a plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir. 1981).

### II.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

A motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) may be based on either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

(9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In addition, a complaint that fails to provide the grounds for the requested relief beyond labels and conclusions will not survive a motion challenging the sufficiency of the claim for relief under Fed. R. Civ. P. 12(b)(6). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III.   RELIANCE ON DOCUMENTS OUTSIDE THE PLEADINGS

The Court may properly consider documents outside the pleadings on a motion to dismiss. On a Rule 12(b)(1) motion to dismiss, courts may consider affidavits and other evidence, without converting a Rule 12(b)(1) motion into a motion for summary judgment. *See St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Similarly, on a motion under Rule 12(b)(6), courts may, without converting the motion into a motion for summary judgment, consider documents referred to in a plaintiff's complaint even if they are not attached to that pleading so long as they are central to the plaintiff's claim and their authenticity is not questioned. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

## ARGUMENT

## I.   PLAINTIFFS LACK ARTICLE III STANDING

Plaintiffs lack Article III standing, which "focuses on whether a plaintiff has a 'personal stake' in the action such that she will be an effective litigant to assert the legal challenge at issue." *Townley v. Miller*, 722 F.3d 1128, 1135 (9th Cir. 2013) (citing *Baker v. Carr,* 369 U.S. 186, 204 (1962). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" .

*Federal Defendants'*
*Motion to Dismiss*

. . ; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (1992)). At the motion to dismiss stage, "the complaint must allege sufficient facts plausibly establishing each element of the standing inquiry." *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012) (citations and quotations omitted).

"When, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*" the plaintiff has the burden to "adduce facts" showing that the choices of independent actors not before the court "have been or will be made in such manner as to produce causation and permit redressability of injury." *Lujan v. Defs. of Wildlife*, 504 U.S. at 562 (citations and quotations omitted). "Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id.* (citations and quotations omitted). In this case, Plaintiffs do not have standing to challenge the October letters, because Plaintiffs fail to allege facts showing that their alleged injuries are traceable to the letters or redressable by this Court.[5]

---

[5] For the purposes of this motion only, Federal Defendants do not argue that Plaintiffs have not sufficiently alleged injury-in-fact.

*Federal Defendants'*
*Motion to Dismiss*

### A.    Plaintiffs' Alleged Injuries are not Traceable to BLM

Plaintiffs have failed to allege facts showing that their alleged injuries are caused by BLM's administrative, non-binding determination that the Cadiz project is within the scope of ARZC's 1875 Act right-of-way easement. To have standing, the injury must be "fairly traceable to the challenged action of the defendant[.]" *Laidlaw*, 528 U.S. at 180–81. This traceability is lacking because Plaintiffs' injuries flow from activities on private land and by parties other than BLM.

Most of Plaintiffs' alleged injuries flow from the drawdown of the Cadiz aquifer and distribution of that water to urban areas, rather than the pipeline itself. *See* Compl. ¶ 13 ("The drying of desert springs and riparian areas, as well as the air pollution caused by excessive drying of desert lakebeds, will cause Plaintiffs[] and their members to suffer actual injury-in-fact . . . ."); *id.* ¶ 14 (discussing harm from distribution of "water from the Cadiz project . . . ."). These alleged injuries are the result of Cadiz, Inc., pumping water on its own private land, using permits it lawfully obtained from state agencies. *See id.* ¶¶ 27, 28. Cadiz does not need BLM's permission to draw down the aquifer underlying its property. "[I]ndependent decisions of numerous third parties render the causal link too weak to support standing[.]" *Isaacson v. Sec'y of Hous. & Urban Dev.*, No. C16-1254JLR, 2017 WL 1364559, at *3 (W.D. Wash. Apr. 14, 2017) (citations omitted); *see also Pritikin v. Dep't of Energy*, 254 F.3d 791, 799 (9th Cir. 2001) (holding that the defendant agency's decision not to seek funding for another agency's medical monitoring program was not the cause of plaintiff's asserted injury because there was no guarantee the funding request would have been

11

*Federal Defendants'*
*Motion to Dismiss*

approved, there were other potentially available sources of funding, and the non-defendant agency was not bound to implement the program in any event).

To the extent Plaintiffs allege injury from the construction of the pipeline itself, *see* Compl. ¶ 13,[6] these injuries flow from the construction and operation of the Cadiz pipeline by the Cadiz company and ARZC's agreement with Cadiz, Inc., permitting Cadiz to construct its pipeline along the ROW. These actions are not fairly traceable to BLM's administrative determination that, in its view, the Cadiz project is within the scope of ARZC's already-existing 1875-Act ROW. BLM's determination is non-binding and does not change the rights ultimately granted by the 1875 Act to ARZC. *See S. Utah Wilderness All. v. BLM*, 425 F.3d 735, 757–58 (10th Cir. 2005) (citing *United States v. Garfield Cty.*, 122 F. Supp. 2d 1201, 1242 (D. Utah 2000) ("Where rights-of-way and easements are concerned, one party cannot serve as the sole judge of scope and extent . . . ."). As courts have made clear in similar contexts, BLM is not an adjudicator of title. *See id.* In other words, even if Plaintiffs' allegations of harm are traceable to the scope of rights granted by the 1875 Act, those allegations are traceable to the 1875 Act and not to BLM's views about what rights were granted by that Act.

Plaintiffs' theory—that BLM's administrative determination regarding the scope of ARZC's ROW is the cause of Plaintiffs' pipeline-related injuries—is "purely speculative" because it relies on the actions of third parties playing out

---

[6] Plaintiffs also allege that BLM made a "decision . . . to allow the Cadiz Project pipeline to circumvent federal health and safety laws," Compl. ¶ 14, but BLM has made no decision whatsoever regarding these unspecified "health and safety laws."

*Federal Defendants'
Motion to Dismiss*

1    exactly as plaintiffs predict. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26,

2    42–43 (1976) (finding that hospital denials of service to indigents could not "fairly

3    . . . be traced" to an Internal Revenue Service ruling relating to emergency care for

4    indigents). The ultimate decision to proceed with construction and operation of the

5    Cadiz pipeline lies with Cadiz and its local partners, and whether it does so within

6    ARZC's existing ROW is between Cadiz and ARZC.

7         **B.**     **Plaintiffs' Alleged Injuries are not Redressable by this Court**

8        Plaintiffs also fail to allege facts showing that their alleged injuries are

9    redressable by this Court. "Redressability depends on whether the court has the

10   ability to remedy the alleged harm." *Nuclear Info. & Res. Serv. v. Nuclear*

11   *Regulatory Comm'n.*, 457 F.3d 941, 955 (9th Cir. 2006) (citing *Hall v. Norton*, 266

12   F.3d 969, 975 (9th Cir. 2001)). "There is no redressability, and thus no standing,

13   where . . . any prospective benefits depend on an independent actor who retains

14   'broad and legitimate discretion the courts cannot presume either to control or to

15   predict.'" *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*,

16   465 F.3d 1123, 1125 (9th Cir. 2006) (quoting *ASARCO, Inc. v. Kadish*, 490 U.S.

17   605, 615 (1989)); *see also Simon*, 426 U.S. at 41–42 ("[T]he 'case or controversy'

18   limitation of Art[icle] III . . . requires that a federal court act only to redress injury

19   that fairly can be traced to the challenged action of the defendant, and not injury

20   that results from the independent action of some third party not before the court.").

22        Here, even if the Court were to remand BLM's determination that the Cadiz

23   pipeline was within the scope of the 1875 Act ROW to BLM, *and* BLM then

24   determined that the Cadiz project was not within the scope of the 1875 Act ROW,

*Federal Defendants'*
*Motion to Dismiss*

the ultimate result of these two possible links would not be the end of the Cadiz pipeline or project. Neither the 1875 Act nor FLPMA provide BLM with the authority to make binding determinations regarding the rights ARZC received via the 1875 Act and thus BLM's determination cannot change the rights granted. Accordingly, it is not clear that ARZC and Cadiz would defer to BLM's non-binding interpretation of those rights. ARZC, moreover, could file suit to quiet title regarding the scope of its ROW. Alternatively, Cadiz and its partners could pursue different options for delivery of the water and drawdown of the aquifer regardless of BLM's actions. For example, SMWD's EIR included analysis of an alternative that would use an already-existing natural gas pipeline to convey water from the Cadiz project. *See* Ex. 1 at 13-18. Thus, even if the Court were to grant Plaintiffs' requested relief, there is no guarantee that their alleged injuries would not still occur. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court . . . ." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

## II.    PLAINTIFFS DO NOT HAVE THIRD-PARTY STANDING TO CHALLENGE BLM'S ADMINISTRATIVE DETERMINATION OF ARZC'S 1875 ACT ROW

Plaintiffs cannot challenge BLM's administrative determination of ARZC's ROW because a plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (citations omitted). The Supreme Court has counseled against "resolving a controversy . . . on the basis of the rights of third persons not parties to the litigation" because (1) "courts should not adjudicate such rights unnecessarily;" (2) the holder of rights

may not wish to assert them, and (3) "third parties themselves usually will be the best proponent of their own rights." *Singleton v. Wulff*, 428 U.S. 106, 113 (1976)).

The court may apply exceptions to this rule if the party seeking to assert third-party standing shows that: (1) "the party asserting the right has a 'close' relationship with the person who possesses the right" or (2) if "there is a 'hindrance' to the possessor's ability to protect his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 130 (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)). But Plaintiffs have not made either of these showings. They have not asserted they have a "close" relationship with ARZC, or that there is any hindrance to ARZC's ability to protect its own interests in the 1875 Act ROW.

Faced with a similar situation of a conservation group seeking to adjudicate a third-party's title, a courts in a sister circuit has held that the conservation group lacks standing. In *The Wilderness Society v. Kane County*, the Tenth Circuit, sitting *en banc*, held that a conservation group, which lacked any property rights of its own, could not "enforce the federal government's property rights in . . . disputed rights of way." 632 F.3d 1162, 1171 (2011). The conservation group lacked prudential standing because its claims "turn[ed] on the superiority of the federal government's property claim[,]" and the federal government was not a party to the case. *Id.* As in *The Wilderness Society*, Plaintiffs' claims turn entirely on the scope of a third parties' property interest. Plaintiffs lack prudential standing because they seek to create an unnecessary title dispute in which they lack a property interest.

*Federal Defendants'
Motion to Dismiss*

1    **III.    THE COURT LACKS SUBJECT-MATTER JURISDICTION UNDER THE APA**

2      Plaintiffs bring their claims under the APA, FLPMA, and the 1875 Act.

3    Because neither the 1875 Act nor FLPMA supplies a private right of action or

4    waiver of sovereign immunity, Plaintiffs must rely on the APA to supply these

5    necessary prerequisites to suit. *See Gros Ventre Tribe v. United States*, 469 F.3d

6    801, 814 (9th Cir. 2006) (citing *CBD v. Veneman*, 394 F.3d 1108, 1111 (9th Cir.

7    2005)). The APA includes a waiver of sovereign immunity and authorizes suit by

8    "[a] person . . . adversely affected or aggrieved *by agency action* within the

9    meaning of the relevant statute[.]" 5 U.S.C. § 702 (emphasis added).[7] The Court

10   lacks subject-matter jurisdiction under the APA because Plaintiffs fail to challenge

11   an agency action, much less a final agency action. BLM did not issue any permit or

12   otherwise approve the actions that Cadiz planned to take with respect to the AZRC

13   ROW, and thus there is no action, final or otherwise, for the Court to review. Nor

14   did BLM fail to take any action it was legally required to take under FLPMA.

15     **A. The Letters are not "Agency Action"**

16     Plaintiffs here challenge BLM's October 13, 2017 administrative

17   determination that the Cadiz pipeline was consistent with the scope of ARZC's

18

---

19   [7] Based in part on the fact that section 702 of the APA provides a waiver of
     sovereign immunity, the requirements of the APA have historically been viewed as
20   jurisdictional. *See, e.g.*, *San Luis Unit Food Producers v. United States*, 709 F.3d
     798, 801 (9th Cir. 2013); *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 n.1
22   (9th Cir. 1990). However, the Ninth Circuit has not consistently taken this view.
     *See Califano v. Sanders*, 430 U.S. 99, 107 (1977). Regardless of the Court's view
23   of this issue, as explained below, Plaintiffs' claims fail as a matter of law – either
     for lack of jurisdiction or on the merits of the claims.
24

1  1875 Act ROW. *See* Compl. ¶ 52. These letters do not constitute agency actions for

2  the purposes of the APA. As the Supreme Court noted, the APA defines "agency

3  action" as "five categories of decisions made or outcomes implemented by an

4  agency." *Norton v. So. Utah Wilderness All.* ("*Norton*"), 542 U.S. 55, 62 (2004)

5  (citing 5 U.S.C. § 551(13)). "Agency action" is defined in the APA to include "the

6  whole or part of an agency rule, order, license, sanction, relief, or the equivalent or

7  denial thereof, or failure to act." 5 U.S.C. § 551(13). BLM's October 13, 2017

8  letters do not meet any of these categories. Instead, these are simply non-binding

9  letters acknowledging the rights ARZC *already received* via the 1875 Act.

10      Merely confirming the legal parameters of an existing permit or right-of-way

11  grant in response to an inquiry does not constitute reviewable agency action under

12  the APA. *C.f. Sierra Club. v. Babbitt*, 65 F.3d 1502, 1508–10 (9th Cir. 1995)

13  (holding that BLM approval of a logging road across a prior right-of-way was not

14  an "agency action" as the term was defined by the Endangered Species Act); *Ctr.*

15  *for Food Safety v. Johanns*, 451 F. Supp. 2d 1165, 1190 (D. Haw. 2006) (internal

16  agency protocols and policies not "agency action" under NEPA or the ESA). Like

17  the report found not to be agency "action" in *Am. Trucking Ass'n, Inc. v. United*

18  *States*, the letter at issue here "merely state[s] or restate[s] in a general and

19  expository way certain conclusions drawn by the [agency] . . . and suggest reasons

20  for those conclusions." *See* 755 F.2d 1292, 1297 (7th Cir. 1985).

22      **B.    Even if the Letters are "Agency Action," they are not "Final"**

23      Even if the October 13 administrative determination could fairly be

24  characterized as "agency action," it is not "final agency action" within the meaning

*Federal Defendants'*
*Motion to Dismiss*

of the APA. Section 704 of the APA requires that the agency action in question be final before a party may seek judicial review. 5 U.S.C. § 704. *See also Nat'l Ass'n of Home Builders v. Norton*, 298 F. Supp. 2d 68, 75 (D.D.C. 2003), *aff'd*, 415 F.3d 8 (D.C. Cir. 2005) (citing 5 U.S.C. §§ 702, 704) ("The APA provides for judicial review only of 'agency action' that is 'final.'"). The Supreme Court in *Bennett* established a two-prong test for determining whether an agency action is final. First, "the action must mark the 'consummation' of the agency's decisionmaking process . . . . And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow . . . .'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (other citations omitted). Although BLM's determination may have been the "consummation" of its decision-making process, BLM's was not one from which legal consequences flow.

BLM's determination is non-binding and does not change the rights ultimately granted by the 1875 Act to ARZC. As discussed above in Section I.A., BLM lacks the authority to unilaterally determine the scope of a right-of-way easement granted to another party. *See S. Utah Wilderness All.*, 425 F.3d at 757–58 (citing *United States v. Garfield Cty.*, 122 F. Supp. 2d 1201, 1242 (D. Utah 2000). In *Southern Utah Wilderness Alliance*, the Tenth Circuit considered BLM's administrative determinations of R.S. 2477 rights-of-way, created pursuant to an 1866 statute providing for "the right of way for the construction of highways over public lands[.]" *See id.* at 740 (citing Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253, *codified at* 43 U.S.C. § 932). The court found that BLM's determinations were non-binding, initial determinations, "not intended to be . . . final agency

*Federal Defendants'
Motion to Dismiss*

action."[8] *Id.* at 757–58. Even in considering mining patents, which are established with much more federal government involvement than R.S. 2477 rights-of-way, the power of the federal government to "'inquire into the extent and validity of the rights claimed against the government . . . cease[s]'" after legal title passes to the mining claimant. *See id.* (quoting *Cameron v. United States*, 252 U.S. 450, 461 (1920)). Thus, BLM's unilateral administrative determination of the scope of ARZC's ROW cannot bind ARZC.

This is consistent with general APA caselaw holding that an agency's non-binding statement of the law is not a final agency action. In *Independent Equipment Dealers Association v. EPA*, the D.C. Circuit found that an EPA letter stating that manufacturers were in compliance with the Clean Air Act, which was contrary to the plaintiff's interpretation of the Clean Air Act, was not a final agency action because "[c]ompelling no one to do anything, the letter had no binding effect whatsoever - not on the agency and not on the regulated community." 372 F.3d 420, 427 (D.C. Cir. 2004); *see also Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 594 (9th Cir. 2008) (finding that Army Corps' jurisdictional determination was not final agency action when the plaintiff's legal obligations arose directly from the Clean Water Act, not from the Corps' issuance of a determination); *Indus. Customers of Nw. Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005) ("[T]he fact that a

---

[8] BLM did not consider its 2015 determination that the pipeline was not within the scope of the ROW to be a final agency action for this reason, either, and thus it was not appealable. *See* Ex. 16 (10/2/15 Kenna letter).

*Federal Defendants'*
*Motion to Dismiss*

statement may be definitive on some position is insufficient to create a final action subject to judicial review."). As in the cited cases, the letters here do not prohibit or require any action of Cadiz or ARZC, and whatever rights Cadiz and ARZC may have flow directly from the 1875 Act and ARZC's corresponding ROW. BLM's letters, therefore, are not final agency action.

### C. Plaintiffs Seek to Compel Action BLM is Not Required to Take

The APA is a limited waiver of sovereign immunity, which only permits a court to compel agency action in certain circumstances. Section 706(1) of the APA authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed[.]" *See* 5 U.S.C. § 706(1). However, a court may compel agency action only if the plaintiff "asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" *Norton*, 542 U.S. at 64; *see also Gros Ventre Tribe v. United States,* 469 F.3d 801, 814 (9th Cir. 2006) (upholding the district court's dismissal of an APA claim for lack of jurisdiction because the government was not required "to take discrete nondiscretionary actions").

As in *Norton*, Plaintiffs here seek to compel amorphous, undefined action. In their second claim, Plaintiffs allege that "[b]y allowing construction and operation of the Cadiz Project pipeline to proceed in the absence of a valid, right-of-way easement . . . , BLM has *failed to act* in accordance with the requirements of FLPMA and . . . other applicable federal laws and regulations." Compl. ¶ 58 (emphasis added). This "failure to act" claim is even less specific than the unsuccessful "failure to act" claim in *Norton*, which sought compliance with a broad nonimpairment mandate, *see Norton* 542 U.S. at 65–66, or in *Village of Bald*

*Federal Defendants' Motion to Dismiss*

*Head*, in which the plaintiffs sought agency compliance with a duty to "adequately protect and renourish . . . beaches." *See Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193–94 (4th Cir. 2013) (citing 5 U.S.C. § 551(13)). Here, Plaintiffs do not even define what mandate BLM has failed to comply with, much less a discrete action it must take.

To the extent Plaintiffs allege that BLM "failed" to determine that the Cadiz project was outside the scope of the 1875 Act ROW, they fail to assert a claim under 5 U.S.C. § 706(1) for two reasons. First, "[t]he term "failure to act" is "properly understood as a failure to take an *agency action*—that is, a failure to take one of the agency actions . . . earlier defined in § 551(13)." *Id.* at 195 (citing *Norton*, 542 U.S. at 62). As discussed above in section III.A., the administrative determination that BLM made was not "agency action," and thus no administrative determination concerning the scope of an 1875 Act ROW—even one that comes to the contrary conclusion—can be compelled for those same reasons.

Second, Plaintiffs fail to assert a cognizable § 706(1) claim because the court cannot compel a particular determination of the scope of the ARZC ROW. "[Section] 706(1) is like the mandamus remedy, 'empower[ing] a court only to compel an agency to perform a *ministerial or non-discretionary act*, or to take action upon a matter, without directing *how* it shall act.'" *Id.* at 195 (quoting *Norton*, at 64) (emphasis added). There is no legal requirement—under FLPMA or any other statute—that requires BLM to make any determination of ARZC's rights under the 1875 Act whatsoever, much less any legal requirement that BLM determine that Cadiz's proposed pipeline is outside the scope of ARZC's railroad

*Federal Defendants'
Motion to Dismiss*

1   easement. *See Kane County Utah v. Salazar*, 562 F.3d 1077, 1088 (10th Cir. 2009)

2   (holding that no "provision of federal law . . . would require the BLM to perform . .

3   . the nonbinding administrative determination of [plaintiffs'] purported rights-of-

4   way . . .". Thus, even if Plaintiffs are seeking to compel BLM to come to the

5   opposite legal conclusion that it did on October 13, *see* Compl. at 16 ¶ C, the Court

6   cannot compel such a discretionary result. *See Hells Canyon Pres. Council v. U.S.

7   Forest Serv.*, 593 F.3d 923, 933 (9th Cir. 2010).

8   **IV.   ALTERNATIVELY, PLAINTIFFS FAIL TO STATE A CLAIM**

9        Alternatively, if the Court finds that the Plaintiffs have standing and that

10   their APA claims are not jurisdictionally barred, Plaintiffs' claims must still be

11   dismissed because Plaintiffs fail to state claims for which relief can be granted

12   under FLPMA, the 1875 Act, and the APA.

13        **A.     Plaintiffs Fail to State a Claim Under FLPMA**

14        Plaintiffs fail to state a claim under FLPMA because the gravamen of their

15   complaint is a dispute over the scope of a third-party's rights under the 1875 Act.

16   *See* Compl. ¶¶55–56. The 1875 Act's provisions governing the scope of the right-

17   of-way survive FLPMA. *See* 43 U.S.C. § 1769(a). Under FLPMA, "Congress

18   specifically chose to preserve vested rights" such as those granted through right-of-

19   way acts. *See W. Watersheds Project*, 468 F.3d 1099, 1104 (9th Cir. 2006) (citing

20   43 U.S.C. §§ 1769(a), 1701(a), (h) historical notes; 43 C.F.R. § 2801.4). Thus,

22   Plaintiffs' claims regarding the scope of the 1875 Act ROW are more properly

23   raised under that statute, not FLPMA.

24

*Federal Defendants'
Motion to Dismiss*

### B.     Plaintiffs Fail to State a Claim under the 1875 Act

To the extent Plaintiffs purport to assert a claim directly under the 1875 Act, any such claim must fail because Plaintiffs' concerns are not within the zone of interests of the 1875 Act. The "zone of interests" test asks "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014) (citation somitted). "[I]n the APA context . . . the test 'forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed' that Congress authorized that plaintiff to sue." *Id.* at 1389 (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012)).

Plaintiffs fail the zone of interests test. As plaintiffs note, the 1875 Act was "designed to permit the construction of railroads through the public lands, and thus enhance their value and hasten their settlement." Compl. ¶ 36 (quoting *Great N. Ry. Co. v. United States*, 315 U.S. 262, 272 (1942)). Plaintiffs' interests in enjoyment and conservation of "natural ecosystems," *see id*. ¶ 12, and allegations of injury stemming from "construction" of the Cadiz Project, *see id*. ¶ 13, are diametrically opposed to the construction and development aims of the 1875 Act. When the interests of the plaintiff do not "align with the statute's goals" under which they bring their claims, "the likelihood" that the plaintiffs "will 'frustrate [rather] than . . . further [the] statutory objectives' renders them unreliable litigants . . . ." *Nw. Requirements Utils. v. FERC*, 798 F.3d 796, 809 (9th Cir. 2015) (quoting *Clarke v. Sec. Indus. Ass'n,* 479 U.S. 388, 397 n.12 (1987)) (holding that

*Federal Defendants'
Motion to Dismiss*

wholesale utility customers were not within the zone of interests of a law intended to improve competition for the benefit of retail-level consumers). Therefore, Plaintiffs fail to state a claim under the 1875 Act.

### C.    Plaintiffs' APA Claim Cannot Proceed Alone

Plaintiffs' APA claim cannot proceed as their sole cause of action. The APA provides a cause of action where a person has suffered a "legal wrong because of agency action, or [has been] adversely affected or aggrieved by agency action *within the meaning of a relevant statute . . . .*" 5 U.S.C. § 702 (emphasis added). "The relevant statute, . . . is the statute whose violation is the gravamen of the complaint . . . ." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 886 (1990). Absent a statute with substantive standards, judicial review is precluded because there is no "law to apply" and "no meaningful standard against which to judge the agency's exercise of discretion." *Or. Nat. Res. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)). Consequently, a claim which fails to identify "a relevant statute" under which judicial review can proceed cannot qualify for the APA's private right of action. *See El Rescate Legal Servs. v. Exec. Office of Immigration Review*, 959 F.2d 742, 753 (9th Cir. 1991).

### CONCLUSION

Federal Defendants respectfully request that this Court dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1), or alternatively, under Rule (12)(b)(6). Plaintiffs lack standing because their alleged injuries are neither traceable to BLM's letter, nor redressable by this Court. Plaintiffs lack third party standing to seek an adjudication of ARZC's ROW. Furthermore, Plaintiffs fail to

*Federal Defendants'*
*Motion to Dismiss*

challenge an agency action, much less a final agency action, and seek to compel relief that this Court cannot grant. Thus this Court lacks subject-matter jurisdiction under the APA. Alternatively, the Court should dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs fail to state a substantive claim for which relief may be granted under either the 1875 Act or FLPMA.

DATED:  February 9, 2018          Respectfully submitted,

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice

*/s/ Rachel K. Roberts*
RACHEL K. ROBERTS
Trial Attorney (WA Bar No. 50303)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
7600 Sand Point Way NE
c/o DOJ/DARC
Seattle, WA 98115
Tel | (206) 526-6881
Fax | (206) 526-6665
Email:  Rachel.Roberts@usdoj.gov

*Attorneys for Federal Defendants*

25

*Federal Defendants'*
*Motion to Dismiss*