BROWNSTEIN HYATT FARBER SCHRECK, LLP
LAWRENCE J. JENSEN (Admitted *pro hac vice*)
ljensen@bhfs.com
DIANE C. DE FELICE (SBN: 149021)
ddefelice@bhfs.com
CHRISTOPHER R. GUILLEN (SBN: 299132)
cguillen@bhfs.com
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
Telephone: 310.500.4600
Facsimile: 310.500.4602

Attorneys for Intervening-Defendants
CADIZ, INC. and CADIZ REAL ESTATE, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et. al.*, <br><br> and <br><br> NATIONAL PARKS CONSERVATION ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. BUREAU OF LAND MANAGEMENT, *et. al.*, <br><br> Defendants, <br><br> and <br><br> CADIZ, INC., *et. al.*, <br><br> Intervening-Defendants. | Case No. 2:17-cv-08587-GW-ASx <br> Case No. 2:18-cv-06775-GW-AS <br> Consolidated <br><br> **CADIZ, INC. AND CADIZ REAL ESTATE, LLC'S STATEMENT OF GENUINE DISPUTES IN RESPONSE TO PLAINTIFFS CENTER FOR BIOLOGICAL DIVERSITY AND CENTER FOR FOOD SAFETY'S STATEMENT OF UNCONTROVERTED FACTS** <br><br> Date: June 20, 2019 <br> Time: 8:30 a.m. <br> Courtroom: 9D <br> Judge: Hon. George H. Wu <br><br> [Filed concurrently herewith: Opposition to Motions for Summary Judgment; Request for Evidentiary Ruling] |

Pursuant to Local Rule 56-2, Intervening-Defendants Cadiz, Inc. and Cadiz Real Estate, LLC (collectively, "Cadiz"), hereby submit this Statement of Genuine Disputes in response to Plaintiffs Center for Biological Diversity and Center for Food Safety's (collectively, "CBD") Statement of Uncontroverted Facts and Conclusions of Law (ECF Doc. 67-2).

This is an administrative record review case and "when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001); *see also Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985) ("[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did. De novo fact finding by the district court is allowed only in limited circumstances that have not arisen in the present case."). "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985).

While all parties to this action have filed Statements of Uncontroverted Facts and Conclusions of Law pursuant to Local Rule 56-1, this Court should use these Statements merely as guides to the record and must disregard any alleged facts that are not supported by the record unless such extra-record facts are used only to support CBD's claim to standing.

| **CBD's Uncontroverted Facts and Supporting Evidence** | **Cadiz's Response to Cited Fact and Supporting Evidence** |
|---|---|
| 1. Defendant-intervenor Cadiz, Inc. ("Cadiz") owns land in the Mojave Desert region of San Bernardino County.<br><br>Evidence: BLM4955 | 1. Undisputed. |

| **CBD's Uncontroverted Facts and Supporting Evidence** | **Cadiz's Response to Cited Fact and Supporting Evidence** |
|---|---|
| 2. Cadiz's land is located at the confluence of the Fenner, Orange Blossom Wash, Bristol, and Cadiz watersheds, which together span over 2,700 square miles.<br><br>Evidence: BLM4955; BLM4999 | 2. Undisputed. |
| 3. Cadiz seeks to implement the "Cadiz Valley Water Conservation, Recovery, and Storage Project" (the "Cadiz project").<br><br>Evidence: BLM4957 | 3. Undisputed. |
| 4. The Cadiz project will extract an average of 50,000 acre-feet of groundwater each year for 50 years from the groundwater basin underlying Cadiz's land.<br><br>Evidence: BLM4957 | 4. Partially disputed.<br><br>The document cited by CBD states: "Under the Groundwater Conservation and Recovery Component, an annual average of 50,000 acre-feet (AF) of groundwater would be pumped from the basin over a 50-year period for delivery to Project Participants in accordance with agreements with Cadiz Inc. and the Cadiz Groundwater Management, Monitoring and Mitigation Plan (GMMMP). The GMMMP has been developed to guide the long-term groundwater management for the basin for the Project. The level of groundwater pumping proposed under the Groundwater Conservation and Recovery Component is designed specifically to extract and conserve groundwater that would otherwise migrate to the Dry Lakes, enter the brine zone, and evaporate." |
| 5. The Cadiz project will construct a 43-mile-long pipeline from Cadiz's private property to the Colorado River Aqueduct.<br><br>Evidence: BLM2263 | 5. Undisputed. |

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

| **CBD's Uncontroverted Facts and Supporting Evidence** | **Cadiz's Response to Cited Fact and Supporting Evidence** |
|---|---|
| 6. The Cadiz project pipeline will be constructed within rights-of-way held by the Arizona and California Railroad Company ("ARZC") established under the General Railroad Right-of-Way Act of 1875, 18 Stat. 482 (the "1875 Act"). Evidence: BLM3712 | 6. Undisputed. |
| 7. Most of the land underlying the 1875 Act rights-of-way at issue in this case is federal land administered by defendant U.S. Bureau of Land Management (BLM). Evidence: BLM2017 | 7. Partially disputed. The meaning of the terms "underlying" and "most" is not clear. The cited page of the record does not include information supporting this statement. It is undisputed that the ARZC 1875 Act right-of-way crosses some federal land administered by the BLM. BLM2107. |
| 8. The federal land underlying the 1875 Act rights-of-way at issue in this case falls within the "California Desert Conservation Area" established by Subchapter VI of the Federal Land Policy Management Act, 43 U.S.C. § 1781. Evidence: BLM2109 | 8. Partially disputed. The meaning of the term "underlying" is not clear. The map appearing at BLM2109 does not show the boundaries of the California Desert Conservation Area. 43 U.S.C. § 1781 speaks for itself and is its own best evidence. It is undisputed that a portion of the ARZC 1875 Act right-of-way at issue crosses land within the California Desert Conservation Area. |
| 9. A substantial portion of the federal land underlying the 1875 Act rights-of-way at issue in this case falls within the boundaries of Mojave Trails National Monument. Evidence: BLM2108-09 | 9. Partially disputed. The meaning of the terms "underlying" and "substantial portion" are not clear. It is undisputed that a portion of the ARZC 1875 Act right-of-way at issue crosses land within the Mojave Trails National Monument. |

| CBD's Uncontroverted Facts and Supporting Evidence | Cadiz's Response to Cited Fact and Supporting Evidence |
|---|---|
| 10. In September 2008, ARZC leased Cadiz a portion of the 1875 Act rights-of-way at issue in this case for the purpose of constructing and operating the Cadiz project pipeline.<br><br>Evidence: BLM4638 | 10. Undisputed. |
| 11. In November 2011, the Solicitor for the Department of Interior, Hilary Tompkins, issued Opinion M-37025.<br><br>Evidence: BLM8037 | 11. Partially disputed.<br><br>It is undisputed that the 2011 M-Opinion was issued. But, CBD fails to acknowledge the 2017 M-Opinion "permanently withdrew" the 2011 M-Opinion. BLM75. |
| 12. Opinion M-37025 concludes, "[a] railroad's authority to undertake or authorize activities within an 1875 Act [right-of-way] is limited to those activities that derive from or further a railroad purpose."<br><br>Evidence: BLM8049 | 12. Partially disputed.<br><br>It is undisputed that the Department reached this conclusion in the 2011 M-Opinion, but the quotation is taken out of context because the 2017 M-Opinion "permanently withdrew" the 2011 M-Opinion. BLM75. |
| 13. In December 2011, Cadiz and ARZC amended their 2008 lease agreement.<br><br>Evidence: BLM4675 | 13. Partially disputed.<br><br>It is undisputed the 2008 lease agreement was formally amended in December 2011. However, ARZC sent a letter to Cadiz in September 2011, several months before the 2011 M-Opinion was issued, requesting certain "anticipated uses by ARZC be incorporated into the design of the Facilities as that term is defined in the Agreement." BLM-004675. This letter triggered the amendment of the 2008 lease agreement to include the six defined railroad benefits. BLM-004678. |

| CBD's Uncontroverted Facts and Supporting Evidence | Cadiz's Response to Cited Fact and Supporting Evidence |
|---|---|
| 14. The December 2011 amendment to the Cadiz/ARZC lease agreement acknowledges and attaches Opinion M-37025.<br><br>Evidence: BLM4676 | 14. Undisputed. |
| 15. The December 2011 amendment to the Cadiz/ARZC lease agreement lists six "design improvements" to be "incorporated into the Facilities' design."<br><br>Evidence: BLM4678 | 15. Undisputed. |
| 16. The December 2011 amendment to the Cadiz/ARZC lease agreement does not alter the rent due to ARZC under the original 2008 lease agreement.<br><br>Evidence: BLM4675-78 | 16. Undisputed. |
| 17. Between January 2012 and January 2015, BLM met repeatedly with Cadiz to discuss the Cadiz project and its relation to ARZC's operations.<br><br>Evidence: BLM2878; BLM2816; BLM2478 | 17. Partially disputed.<br><br>The meaning of "repeatedly" is not clear. ARZC and Cadiz submitted significant information to BLM and met with BLM several times between January 2012 and January 2015. *See, e.g.,* BLM4866; BLM4684; BLM2882-83; BLM2858-69; BLM2819-47; BLM 2812-15; BLM2777-81; BLM2715-16; BLM2482-33; BLM2303-2477. |
| 18. David Bernhardt, then at the law firm of Brownstein, Hyatt, Farber, Schreck LLP, represented Cadiz at various points during Cadiz's negotiations with BLM between January 2012 and January 2015.<br><br>Evidence: BLM2879; BLM2777; BLM2717 | 18. Undisputed. |

| CBD's Uncontroverted Facts and Supporting Evidence | Cadiz's Response to Cited Fact and Supporting Evidence |
|---|---|
| 19. On August 11, 2014, BLM issued Instruction Memorandum ("IM") 2014-122. IM 2014-122 identifies various case specific factors in determining whether an activity falls within the scope of an 1875 Act right-of-way.<br><br>Evidence: BLM2726 | 19. Partially disputed.<br><br>It is undisputed that BLM issued the Instruction Memorandum 2014-122 in August 2014 ("2014 IM"). However, the 2014 IM did not identify "case specific factors" to use in determining whether an activity falls within the scope of an 1875 Act right-of-way. The 2014 IM changed the standard delineated in the 2011 M-Opinion used to analyze these activities. The 2014 IM created the erroneous "originate or derive from" standard, asking "Did the railroad purpose or the non-railroad purpose drive the activity or the design of the activity in question? What is the primary objective of the activity in question [?]" BLM2727. Further, the 2014 IM has been rescinded. BLM971-72. |
| 20. In October 2015, BLM completed a case-specific evaluation of the Cadiz project.<br><br>Evidence: BLM2256 | 20. Partially disputed.<br><br>It is undisputed that the cited page characterizes what BLM has prepared as an "in-depth evaluation of the project." However, the meaning of "case-specific evaluation" is not clear. Also, the 2015 determination applied the erroneous "originate or derive from" standard and, as such, has been expressly superseded. BLM4-6. |
| 21. In October 2015, BLM issued a 24-page report analyzing the Cadiz project pipeline and the design improvements described in the 2011 amendment to the ARZC/Cadiz lease agreement.<br><br>Evidence: BLM2257-80 | 21. Partially disputed.<br><br>It is undisputed that BLM issued a 24-page report purportedly analyzing the Cadiz project pipeline and whether it fell within the scope of the ARZC 1875 Act right-of-way. However, this report applied the erroneous "originate or derive from" standard and, as such, has been expressly superseded. BLM4-6. |

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

| **CBD's Uncontroverted Facts and Supporting Evidence** | **Cadiz's Response to Cited Fact and Supporting Evidence** |
|---|---|
| 22. On October 2, 2015, BLM advised Cadiz it had "reached an administrative determination that the [Cadiz] Project as described cannot be authorized by ARZC because it is outside the scope of ARZC's [right-of-way] grants held under the 1875 Act." <br><br> Evidence: BLM2243-44 | 22. Partially disputed. <br><br> It is undisputed that BLM issued a letter to Cadiz stating the pipeline "is outside the scope of ARZC's" right-of-way. However, this letter applied the erroneous "originate or derive from" standard and, as such, has been expressly superseded. BLM4-6. |
| 23. In December 2016, President-elect Trump ranked the Cadiz project as number 15 on a list of "Emergency & National Security Projects." <br><br> Evidence: BLM2172, 2188 | 23. Undisputed. |
| 24. On February 1, 2017, Acting Deputy Secretary for Interior, James Cason, met with attorneys at Brownstein, Hyatt, Farber, Schreck LLP representing Cadiz. <br><br> Evidence: BLM2114 | 24. Partially disputed. <br><br> This document is a calendar invite and does not confirm whether a meeting actually occurred. Plaintiffs do not provide meeting notes or other confirmation that the scheduled meeting took place. This calendar invite is for a video call and does not state whether the subject is Cadiz. It is not disputed that the document cited is a calendar invite from James Cason and that Luke Johnson and Larry Jensen work at Brownstein, Hyatt, Farber, Schreck LLP and that Cadiz is represented by Brownstein, Hyatt, Farber, Schreck LLP. |
| 25. On March 6, 2017, Mr. Cason held a "Meeting on the Cadiz Pipeline Project in California" with Kathleen Benedetto and Downey Magallanes. <br><br> Evidence: BLM2009-10 | 25. Partially disputed. <br><br> This document is a calendar invite and does not confirm whether a meeting actually occurred. It is not disputed that the document cited is a calendar invite for March 6, 2017. |

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

| **CBD's Uncontroverted Facts and Supporting Evidence** | **Cadiz's Response to Cited Fact and Supporting Evidence** |
|---|---|
| 26. At the time of the March 6, 2017 meeting, Kathleen Benedetto was Special Assistant to the Secretary of Interior.<br><br>Evidence: BLM881 | 26. Undisputed. |
| 27. At the time of the March 6, 2017 meeting, Downey Magallanes was Acting Deputy Chief of Staff at the Department of Interior.<br><br>Evidence: BLM787 | 27. Disputed.<br><br>Downey Magallanes was the Special Assistant to the Secretary of Interior on March 6, 2017. |
| 28. The Acting Deputy Secretary's "task matrix" indicates Mr. Cason asked Ms. Benedetto to "revise the IM" during the March 6, 2017 meeting.<br><br>Evidence: BLM1995-96 | 28. Undisputed. |
| 29. The Acting Deputy Secretary's "task matrix" indicates Mr. Cason asked Ms. Magallanes to "write an analysis that says the facts suggesting railroad benefits were ignored" during the March 6, 2017 meeting.<br><br>Evidence: BLM1995-96 | 29. Partially disputed.<br><br>This quotation is taken out of context as the quotation begins by asking Ms. Magellanes to "look at the facts." BLM1995-96. Otherwise not disputed that the task matrix includes the quoted language. |
| 30. The Acting Deputy Secretary's "task matrix" indicates Mr. Cason asked Ms. Benedetto to "get rid of the Hillary opinion, to leave the matter up to the railroad right of ways" during the March 6, 2017 meeting.<br><br>Evidence: BLM1995-96 | 30. Partially disputed.<br><br>The cited document does not say that this assignment was given to Ms. Benedetto; no individual was named as responsible for carrying out this task. It is undisputed that the cited document contains the quoted language. |
| 31. On March 29, 2017, BLM issued IM 2017-060, which rescinded IM-2014-122 and concluded, "[a]ll issues related to addressing activities within railroad rights-of-way granted pursuant to the [1875 Act] . . . are to be directed to the BLM Washington Office . . . ." | 31. Undisputed. |

| CBD's Uncontroverted Facts and Supporting Evidence | Cadiz's Response to Cited Fact and Supporting Evidence |
|---|---|
| Evidence: BLM971. | |
| 32. On June 30, 2017, Acting Interior Solicitor Daniel Jorjani suspended and temporarily withdrew Opinion M-37025.<br><br>Evidence: BLM785 | 32. Undisputed. |
| 33. In September 2017, Acting Solicitor Jorjani issued Opinion M-37048.<br><br>Evidence: BLM75 | 33. Undisputed. |
| 34. Opinion M-37048 permanently withdraws Opinion M-37025.<br><br>Evidence: BLM75 | 34. Undisputed. |
| 35. Opinion M-37048 "concludes that the rights-of-way granted to railroad companies under the 1875 Act allow railroad companies to lease portions of their easements to third parties without permit or grant from [BLM], provided that such leases are limited to the surface, broadly defined, of the easement and do not interfere with the continued use of the easement as a railroad."<br><br>Evidence: BLM76 | 35. Partially disputed.<br><br>It is not disputed that the cited page of Opinion M-37048 includes the quoted language. However, the M-Opinion provides additional clarification on BLM95-96, stating that even if the scope of a right-of-way is limited to railroad purposes, "under the incidental use doctrine, a railroad may undertake commercial activity, including authorizing a third party to undertake commercial activity, as long as the activity is incidental to the operation of the railroad and a 'free and safe passage is left' for the operation of the railroad." BLM95-96. |
| 36. On October 13, 2017, BLM Acting Director Michael D. Nedd advised Cadiz that BLM's "October 2015 administrative determination is no longer an accurate representation of BLM's view of the applicable law and facts, and is therefore expressly | 36. Partially disputed.<br><br>This quotation has been slightly altered from the wording in the letter cited, although not in any substantive way. The letter notes that BLM's "October |

| CBD's Uncontroverted Facts and Supporting Evidence | Cadiz's Response to Cited Fact and Supporting Evidence |
|---|---|
| superseded . . . ." <br><br> Evidence: BLM4 | 2015 administrative determination is no longer an accurate representation of **the** BLM's view of the applicable law and facts, and **therefore is** expressly superseded . . . ." (alterations noted in **bold**). |
| 37. On October 13, 2017, Acting Director Nedd further advised Cadiz that the Cadiz project "falls within the scope of rights granted to [ARZC] under the [1875 Act], and therefore does not require authorization by BLM." <br><br> Evidence: BLM4 | 37. Undisputed. |
| 38. Defendants did not prepare an environmental assessment or environmental impact statement in accordance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., in connection with it October 13, 2017 determination that the Cadiz project falls within the scope of rights granted to ARZC under the 1875 Act. <br><br> Evidence: BLM1-8517 | 38. Partially disputed. <br><br> It is not disputed that BLM did not prepare an environmental assessment or environmental impact statement when it issued the October 2017 letter to Cadiz. However, no such environmental review was required at the time as the letter did not trigger review under the National Environmental Policy Act. |

Dated: May 10, 2019

BROWNSTEIN HYATT FARBER SCHRECK, LLP


By: */s/ Diane C. De Felice*
　　LAWRENCE J. JENSEN
　　DIANE C. DE FELICE
　　CHRISTOPHER R. GUILLEN
　　Attorneys for Intervening-Defendants
　　CADIZ, INC. and CADIZ REAL
　　ESTATE, LLC

19187825

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067